UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONNIE A. O/B/O
JONATHAN A. (DECEASED),

                              Plaintiff,

v.                                              CASE NO. 1:22-cv-00171
                                                (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

         The parties consented in accordance with a standing order to proceed before the

undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g).

The matter is presently before the Court on the parties' cross-motions for judgment on

the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review

of the administrative record and consideration of the parties' filings, Plaintiff's motion for

judgment on the administrative record is **DENIED**, Defendant's motion for judgment on

the administrative record is **GRANTED**, and the decision of the Commissioner is

**AFFIRMED**.

### I.   RELEVANT BACKGROUND

         On September 28, 2018, Plaintiff[1] applied for a period of Supplemental Security

Income (SSI) under Title XVI of the Social Security Act and Disability Insurance Benefits

_____

[1] For simplicity, both parties refer to Jonathan A., decedent, as the Plaintiff, even though his mother is the named plaintiff. So will the Court.

(DIB) under Title II of the Act. (Tr. 213-26.)  Plaintiff's applications were denied. (Tr. 69-83.) He then timely requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 108.)  On February 20, 2020, plaintiff appeared with counsel before ALJ Carl Stephan through a video hearing.  (Tr. 44-68.)  Thereafter, ALJ Stephan scheduled the claimant for post-hearing interrogatories, but he died on March 8, 2020, before he could attend the consultative examinations.  (Tr. 208.)  Thereafter, the claimant's representative, his mother, attended a telephone hearing on February 10, 2021 before ALJ Patane.  (Tr. 31-43.)

### A.    Factual Background

Plaintiff was born on August 13, 1989 and had a high school education.  (Tr. 84.) Plaintiff alleged disabilities of unable to focus, hyperness, depression, anxiety, isolates himself, PTSD, asthma, trouble moving without becoming lightheaded, chest hurts and he will wheeze, allergies, left humerus injury, left arm with pop, does not feel that he has full use of his left arm, and antisocial personality disorder. (Tr. 224.) His alleged onset date of disability was September 20, 2014, and his date last insured was December 31, 2014. (Tr. 70, 72.)

During the first hearing before ALJ Stephan, Plaintiff testified he was 30 years old and lived with his girlfriend and two roommates.  (Tr. 48.)  He testified that he drove a car approximately three times a week.  (Tr. 50.)  Plaintiff was not working at the time but confirmed the pay records from 2019 and that he could not continue his roofing job due to a physical shoulder injury.  (Tr. 50-52.)

Plaintiff also testified to the conditions he identified as keeping him from working, including anxiety. (Tr. 55.)  Plaintiff explained this made it difficult for him to keep

schedules. (*Id.*)  Plaintiff identified Spectrum Health as his medical provider pertaining to his anxiety.  (Tr. 56.)  However, Plaintiff indicated that he lost his insurance and thus had stopped treatment. (Tr. 56-57.)  Plaintiff testified that he had been hospitalized only once for his anxiety, in 2013. (Tr. 58.)

Plaintiff also disclosed other conditions for which he had received treatment, including addiction, ADHD, depression, and PTSD.  (Tr. 59.)  Plaintiff testified he was no longer on any medication due to the loss of his insurance.  (*Id.*)  He also described his experience with asthma, particularly that he would experience wheezing, and that the severity of his symptoms changed based on certain factors such as weather, physical activity, exposure to animals, etc.  (Tr. 60.)  He also explained issues with his shoulder (due to a broken humerus bone injury). (Tr. 61-62.)

Plaintiff testified his conditions caused him to be "all over the place always," which he indicated meant he could not concentrate or focus.  (Tr. 62.)  He also explained that he would start tasks or projects but would be unable to finish them.  (*Id.*)  He further described that he did not respond well to stressful situations, either lashing out, crying, or withdrawing. (Tr. 63-64.)  Plaintiff indicated that he would have panic attacks, which made him unable to breath and experience a desire to leave the situation.  (Tr. 64.)  He also testified that he avoided crowds of people, but he also indicated that he gets along well with supervisors and coworkers.  (Tr. 64-65.)

Plaintiff testified that he could read and write, although not the best.  (Tr. 65.) He had an IEP and attended special ed classes in high school.  (*Id.*)

Plaintiff testified he had some difficulty sleeping.  (Tr. 66.)

Plaintiff also detailed his ability to learn tasks, explaining that it depended on the task.  (*Id.*)  He noted that sometimes he needed to be shown what to do, but he testified he could learn the tasks, it just might take him longer.  (*Id.*)

During this hearing, Plaintiff's counsel recognized a prior ALJ decision on a previous claim, dated September 19, 2014, acknowledging the date last insured and the brevity of the period at issue for Title II benefits. (Tr. 61.)

Following the first hearing, Plaintiff passed away.  Plaintiff's mother testified at the second hearing before ALJ Patane and confirmed that Plaintiff had emotional problems, as well as mental and focusing problems. (Tr. 34.)  She described that Plaintiff had difficulty finishing tasks and following through with plans. (Tr. 34-35.)  She also testified that he had difficulty remembering to do things and that learning new tasks would take him longer than usual, sometimes resulting in frustration and him giving up on learning. (Tr. 37.)  She indicated that he held several jobs on a temporary basis.  (Tr. 35.)  She also described that he had difficulty maintaining a schedule, both in a work setting and with keeping doctor appointments.  (Tr. 39.)  She also testified that, prior to committing suicide, he had rejected assistance in getting into a facility, indicating he was feeling better. (Tr. 35.)   But she did note issues with mood swings, which could affect relationships.  (Tr. 40-41.)

**B.    Procedural History**

On February 24, 2021, ALJ Patane issued a written decision finding plaintiff not disabled under the Social Security Act.  (Tr. 10-30.) On January 7, 2022, the Appeals Council (AC) denied plaintiff's request for review, rendering the ALJ's decision the final

decision of the Commissioner.  (Tr. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law:

1.  The claimant met the insured status requirements of the Social Security Act through December 31, 2024. (Tr. 16.)

2.  The claimant was not engaged in substantial gainful activity since September 20, 2014, the alleged onset date. (20 C.F.R. § 404.1571 *et seq*. and § 416.971 *et seq.*). (Tr. 16.)

3.  The claimant had the following severe impairments: depressive disorder, anxiety disorder, attention deficit hyperactivity disorder, posttraumatic stress disorder, personality disorder, and substance abuse. (20 C.F.R. § 404.1520(c) and § 416.920(c)). (Tr. 16.)

4.  The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), § 404.1525, § 404.1526, § 419.920(d), § 416.925 and § 416.926). (Tr. 17.)

5.  The claimant had a residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could understand, remember, execute, and maintain attention and concentration only for simple tasks; could have only occasional interaction with the public; and could tolerate changes associated only with simple work tasks.  (Tr. 19.)

6.  The claimant had no past relevant work (20 C.F.R. § 404.1565 and § 416.965). (Tr. 24.)

7.  The claimant was born on August 13, 1989 and was 25 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. He remained a younger individual until his death on March 8, 2020 (20 C.F.R. § 404.1563 and § 416.963).  (Tr. 24.)

8.  The claimant had at least a high school education (20 C.F.R. § 404.1564 and § 416.964).  (Tr. 24.)

9.  Transferability of job skills was not an issue because the claimant did not have past relevant work (20 C.F.R. § 404.1568 and § 416.968).  (Tr. 24.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. § 404.1569, § 404.1569(a), § 416.969, and § 416.969(a)).  (Tr. 24.)

11. The claimant was not under a disability, as defined in the Social Security Act, from September 20, 2014, through the March 8, 2020, date of death (20 C.F.R. § 404.1520(g) & § 416.920(g)).  (Tr. 25.)

## II.   LEGAL STANDARD

### A.   Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B.    Standard to Determine Disability**

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 7 (W.D.N.Y. 2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain his consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

## III.    ANALYSIS

In support of remand, Plaintiff makes four primary arguments. First, Plaintiff argues that he implicitly requested that the ALJ reopen his prior claim, and that the ALJ did constructively reopen the claim, such that the ALJ's failure to consider evidence from that prior claim was error.   Second, Plaintiff argues that the ALJ failed to fully develop the record, by not ensuring all medical evidence was in the record.   Third, Plaintiff contends that the ALJ's residual functional capacity (RFC) is not supported by substantial evidence. Finally, Plaintiff argues that the ALJ erred by failing to introduce vocational expert testimony. The Court takes each of these arguments in turn.

### A. Plaintiff Did Not Implicitly Request the Reopening of his Prior Case, and So the ALJ Properly Did Not Consider the Prior Claim File.

Plaintiff's first argument is that the ALJ failed to obtain and consider evidence from his first disability application.  This argument hinges on whether Plaintiff requested that the prior case be reopened.  Plaintiff argues that he impliedly made such a request when he filed his current application, and that the ALJ actually or constructively reopened the prior case by adjudicating the merits of his claims based on the entire alleged relevant time period. Based on this, Plaintiff contends the ALJ was required to obtain and review the prior case file, and his failure to do so necessitates remand.

#### 1. Reopening

Plaintiff argues that the ALJ had the obligation to obtain the prior case file because his pending claim involved a possible reopening.  (Doc. 8-1 at 11.)  According to Plaintiff, the possible reopening existed because his filing included an implied request to reopen. (*Id.*)  Plaintiff relies primarily on the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), section I-2-1-13.B, to support this argument. (*See id.*)

HALLEX is, by definition, an internal manual that "conveys guiding principles, procedural guidance, and information to hearing level and Appeals Council staff." HALLEX I-1-0-1.  It "defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels."  *Id.*

However, whether HALLEX is binding authority is not settled law.  *See Mark P. v. O'Malley*, 5:23-cv-00186 (MAD), 2024 WL 1219632, at *13-14 (N.D.N.Y. Mar. 20, 2024) (discussing the circuit split on whether HALLEX is binding authority).  Courts within this

district acknowledge that it is not, per se, due controlling weight.  *See Marquise G. v. Comm'r of Soc. Sec.*, 655 F. Supp. 3d 149, 155 (W.D.N.Y. 2023) (recognizing that "The HALLEX is a manual that provides the Social Security Administration with a set of guidelines and procedures and district courts within the Second Circuit have found that HALLEX policies are not regulations and therefore not deserving of controlling weight.")(internal citation omitted).   As such, "a failure to follow HALLEX does not necessarily constitute legal error."  *Id.* (quoting *Gallo v. Colvin*, No. 15-CV-9302 (AT) (BCM), 2016 WL 7744444, at *12 (S.D.N.Y. Dec. 23, 2016)).  However, the Second Circuit has recognized that, generally, "where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures.  This is so even where the internal procedures are possibly more rigorous than otherwise would be required." *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016) (internal quotations and citations omitted).  For the reasons set forth below, the Court finds that the ALJ did not violate HALLEX and therefore need not wade into this issue.

HALLEX 1-2-1-13 B.1 identifies when consideration of a prior claim file is required.  It provides, as relevant here, that the prior claim file will be submitted to the ALJ when "the pending claim involves a possible reopening or *res judicata* issue (HALLEX I-2-9 and I-2-4-40)." HALLEX 1-2-1-13 B.1.

HALLEX I-2-9-10 governs requests for reopening, and Plaintiff directs the Court to section B, which involves an implied request for reopening.  This provision notes that a claimant may impliedly request reopening by "submit[ting] additional evidence or information that implies he or she is requesting reopening and revision of a prior determination or decision."  HALLEX I-2-9-10.B.   HALLEX elaborates that this usually

"occurs when a claimant alleges an onset date of disability within a previously adjudicated period or, after the ALJ issues a decision, the claimant sends the ALJ new and material evidence that relates to the earlier period at issue." *Id. See also Tracy M. v. Kijakazi,* No. 20-CV-6920L, 2022 WL 11961350, at *2 (W.D.N.Y. Oct. 20, 2022) (recognizing that a claimant impliedly requests reopening where she alleges a disability onset date within the previously adjudicated period).   HALLEX requires the ALJ to reopen the determination or decision "if the conditions and timeframes for reopening are met (as explained in HALLEX I-2-9-30, I-2-9-40, and I-2-9-60), the ALJ has jurisdiction over the issue, and the facts and evidence of the particular case warrant reopening."  HALLEX I-2-9-10.B.

Review of the facts in this case reveals that Plaintiff did not impliedly request that the ALJ reopen his prior claims.  First, Plaintiff did not allege a disability onset date within the previously adjudicated period.  The ALJ assigned to his prior claim issued a decision dated September 19, 2014. (*See* Doc. 8-3 at 2.)   In Plaintiff's current application, he identified an alleged disability onset date of September 20, 2014—**one day after** the period encompassed by his prior claims.  (Tr. 215.)  As such, Plaintiff failed to implicate his prior period as required for reopening by HALLEX I-2-9-10.B. *See Emiliano P. v. Comm'r of Soc. Sec.*, No. 6:23-cv-0708, 2024 WL 4189657, *6 (N.D.N.Y. Aug. 28, 2024) (concluding there was no implied request to reopen when the disability onset date was one day after the prior claim period); *see also Tracy M.,* 2022 WL 11961350, at *2. Further, Plaintiff did not submit any "new and material evidence" relating to the earlier period.  The record does not reflect that Plaintiff submitted any new evidence to the ALJ following his decision, nor did he submit evidence with his briefing to the Appeals Council. (*See* Tr. 207-10; 1-6.)

Finally, the discussion on the record between the ALJ and Plaintiff's counsel similarly reveals no request for reopening.  On the record, the ALJ noted the prior decision dated September 19, 2024 and the DLI of December 31, 2024. (Tr. 62.)  He specifically stated "[s]o that gives us a brief period for Title 2.  And the other part of the claim of course is Title 16.  Just wanted to share that with you."  (*Id.*)  Counsel acknowledged that statement by responding "yes."  (*Id.*)  She did not object or otherwise contend Plaintiff had attempted to reopen the prior claim.

These facts demonstrate that Plaintiff did not impliedly request a reopening, and therefore, HALLEX did not require the ALJ to review the prior case file.[2] *See Emiliano P.*, 2024 WL 4189657, at *6; *see also Tracy M., 2022* WL 11961350, at *2.

## 2.    Constructive Reopening

Even if Plaintiff did impliedly request that the prior claim be reopened, and the ALJ denied such a request by rendering his decision, such a denial is unreviewable by this Court.  *See Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) (recognizing that "[t]he Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus is generally unreviewable even if there was a hearing in the case) (reversed on other grounds).   Indeed, federal courts may only review the decision not to reopen a prior claim if (1) the ALJ constructively reopened the case or (2) where the claimant was denied due process.  *See id.* If the ALJ reviews the entire record

---

[2] While HALLEX 1-2-1-13.B.2 also permits the prior review of evidence (as noted by the use of the word "may"), when there's a need to establish a longitudinal medical, educational, or vocational history, such a situation is not found here.  Nothing precluded Plaintiff from filing relevant evidence in this case, and the record before the ALJ encompassed the alleged disability period.  An ALJ cannot be expected to review evidence from prior claims to develop a record in a new claim, when the record otherwise appears complete. *See* the Court's discussion in Section B below. Further, the evidence Plaintiff points to (educational evidence pertaining to Plaintiff's learning ability in 2006/2007) is remote and was otherwise testified to during the hearing.  The Court finds no error.

and renders a decision on the merits, the earlier decision is deemed to be reopened and thus reviewable.  *See id.*  Here, Plaintiff argues that the ALJ constructively reopened the case when he discussed and ruled upon the merits of both Plaintiff's new claims based on the entire alleged relevant time period.

Other than this statement, Plaintiff does not expound on facts that show the ALJ constructively reopened the case.  To the contrary, it seems that the ALJ did not consider the full range of evidence for the time period encompassing both claims.  Indeed, Plaintiff's primary argument above is that the ALJ *did not* consider evidence from the prior claim file, and the ALJ plainly only adjudicated this pending claim for this limited time period.  Further, as discussed above, Plaintiff defined the relevant period to be separate from the prior claim period by alleging a disability onset date ***after*** the prior claim period. While the ALJ did consider certain evidence that predated the alleged disability onset date, such consideration does not equate to constructive reopening.  *See Byam*, 336 F.3d at 180–81 (finding that the ALJ did not constructively reopen the case when Plaintiff made "no showing that the ALJ ruled on the merits of the earlier evidence, and nothing in the record indicates that the ALJ's disability determination was based on anything other than evidence submitted as part of the [subsequent] application."); *see also D'Amato v. Comm'r of Soc. Sec.*, No. 18CV6998VECBCM, 2020 WL 759957, at *19 (S.D.N.Y. Jan. 30, 2020), *report and recommendation adopted sub nom. D'Amato v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-6998 (VEC), 2020 WL 757841 (S.D.N.Y. Feb. 14, 2020) (recognizing that "[t]he ALJ did not 'constructively reopen' plaintiff's first application merely by discussing some evidence pre-dating February 22, 2012, before rendering a decision on the merits of her second application.").

Therefore, to the extent the ALJ's decision constitutes a denial of a request to reopen, the ALJ did not constructively reopen the claim.  As such, the denial is not reviewable by this Court.

**B.  The Record was Fully Developed.**

Plaintiff next argues that the ALJ failed to fully develop the record by not obtaining and considering generally the prior evidence pertaining to his first claim.  (Doc. 8-1 at 14-15.)  Plaintiff contends this consideration was part of his obligation to fully develop the record in this case.  (*Id*. at 15.)  Additionally, Plaintiff argues that the ALJ had an obligation to consider evidence in the 12 months before the application was filed and, for the DBI benefits, the twelve months prior to the last insured date.  (*Id*. at 15-16.) Plaintiff also points to evidence pertaining to Plaintiff's alleged learning impairments from 2006 and 2007 and treatment notes from 2013 and 2014.  Specifically, Plaintiff identifies: (1) the treatment notes from LMSW Tebo; (2) treatment notes from August 26 and November 6, 2013, January 27, April 18, July 8, September 27, and December 17, 2014 (which visits are referenced but no notes from these dates are included); and (3) an "opinion" from NPP Frisicaro dated May 14, 2014.

The Court acknowledges that "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). This requires the ALJ to develop a claimant's complete medical history. *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)–(f)).  However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is

under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

The Court has carefully reviewed the record and finds that there are "no obvious gaps" in the record, which otherwise appears complete, that would have required the ALJ to take additional steps to develop the record.

First, most of the evidence Plaintiff identifies as missing is from the prior claim period—one which was already finally adjudicated and not reopened as determined above. As such, the doctrine of *res judicata* bars the consideration of that evidence in the present case. *Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) ("Administrative *res judicata* is appropriately applied where a prior determination on the same facts and same issues made by the Commissioner has become final by either administrative or judicial action.") (citing 20 C.F.R. § 404.957(c)(1)). *See also LaFave v. Comm'r of Soc. Sec.*, No. 7:16-CV-0621 (GTS), 2017 WL 4011264, at *9 (N.D.N.Y. Sept. 11, 2017) (applying *res judicata* and concluding that, because "the ALJ adjudicating the current application found no grounds to reopen the prior application, this Court is bound by those findings and may not now reevaluate that same evidence in search of a different conclusion"). The ALJ was not required to consider evidence from a prior application, which resulted in a finding that Plaintiff was not disabled, as evidence in the present claim. *See James N. v. Comm'r of Soc. Sec.*, No. 3:18-CV-1324 (CFH), 2020 WL 1140498, at *5 (N.D.N.Y. Mar. 6, 2020).

Second, Plaintiff's contentions regarding the treatment notes from LMSW Tebo and notes from September 27, and December 17, 2014 are similarly not well taken. The Court recognizes that the record contains more than two hundred pages of records from

Spectrum Health Services.  (*See* Tr. 473-696.)  These notes include multiple records signed by LMSW Tebo, including treatment action plans, which contain notes regarding Plaintiff's progress.  (*See* Tr. 476-83; 486-93; 496-504.)  The Spectrum Health Services notes generally, and the records reflecting LMSW Tebo's signatures, occur with consistency, without any notable gaps.  And the coverage page reflects that it includes "all records" from January 1, 2014-November 27, 2019. (Tr. 473.)  In light of this representation of completeness, made by Plaintiff, it remains questionable whether separate treatment notes even exist, especially when Plaintiff made a similar argument pertaining to missing notes in his prior action, but yet did not ensure any distinct notes by LMSW Tebo were included.  *See Andrisani v. Colvin*, No.1:16-cv-00196(MAT), 2017 WL 2274239, *2 (W.D.N.Y. May 24, 2017) (rejecting plaintiff's argument that the ALJ failed to develop the record because LMSW Tebo's treatment notes were allegedly missing from the record).

Accordingly, a review of this record does not reveal any "obvious gaps" that would require the ALJ to request additional records.  *See Rosa,* 168 F.3d at 79 n.5.  As such, the ALJ did not fail to fully develop the record.

### C. The RFC Is Supported by Substantial Evidence.

Plaintiff next argues that the ALJ's RFC is not supported by substantial evidence because there was no medical opinion in the record.  Plaintiff contends that the ALJ should have requested evidence from a medical expert when Plaintiff died prior to attending the consulting examinations or used the opinion by NPP Frisicaro from May 2014.  According to Plaintiff, this is reversible error.

The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence."  *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (recognizing that where the record contained sufficient evidence from which an ALJ can assess an RFC, a medical source statement or formal medical opinion may not be required) (internal quotations and citations omitted).  *See also April W. v. Comm'r of Soc. Sec.*, 1:24-cv-00044-MAV, 2024 WL 4804778, *5 (W.D.N.Y. Nov. 14, 2024) (similar).

However, courts in this district have generally acknowledged that, to establish an RFC without medical opinion evidence, the record "must show limitations that have measured, qualified, or described themselves in a way that permits reasonable inferences of the claimant's RFC."  *Lee C. v. Comm'r of Soc. Sec.*, 23-cv-0171-LJV, 2024 WL 217582, *3 (W.D.N.Y. Jan. 19, 2024); *see also Johnson v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 286, 293-94 (W.D.N.Y. 2018) (recognizing that the record must provide some interpretation that correlates medical data into functional limitations).  That said, courts also recognize that certain impairments may be "relatively simple and mild," such that an ALJ may render a "common sense judgment" without a physician's assessment."

*Kenneth P. v. Comm'r of Soc. Sec*, 1:19-cv-01478, 2021 WL 1135469, *4 (W.D.N.Y. Mar. 25, 2021); *see also Janine T. v. Comm'r of Soc. Sec*, No. 23-cv-384-FPG, 2024 WL 1678128, *3 (W.D.N.Y. April 18, 2024) (recognizing that "[w]hile an ALJ may render common sense judgments about functional capacity, [she] must avoid the temptation to play doctor.") (internal quotation omitted). Generally, ALJs are not entitled to such "common sense judgments" when mental impairments are involved, as these impairments are typically "highly complex and individualized." *Tontalea B. v. Comm'r of Soc. Sec*, 22-cv-00215-MJR, 2024 WL 1904435, *4 (April 30, 2024) (internal citations omitted).

Having reviewed the ALJ's RFC, the Court finds that the RFC was based on substantial evidence.

First, before turning to the RFC, ALJ Patane considered, at step 3, the paragraph B criteria to determine whether plaintiff's mental impairments "meet or medically equal the severity" of the relevant listings. (Tr. 17-19.) The ALJ determined that plaintiff had the following limitations in each of the relevant areas of functioning: (1) "mild" limitation in understanding, remembering or applying information; (2) "moderate" limitation in interacting with others; (3) "moderate" limitation in concentrating, persisting or maintaining pace; and (4) "moderate" limitation in adapting or managing oneself. (Tr. 18.)  The ALJ specifically noted that the limitations identified at step 3 "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."  (Tr. 19.)

Next, the ALJ considered the appropriate RFC starting with Plaintiff's testimony at the February 2020 hearing.  (Tr. 20.)  He noted Plaintiff testified that his anxiety reportedly

made him "give up on things" and he struggled with anger, self-esteem, emotional lability, concentration, and focus, all of which made it difficult for him to finish what he started. (*Id.*)  He also testified to experiencing panic attacks and this caused him to avoid large crowds.  (*Id.*)  The ALJ noted that Plaintiff's mother's testimony at the February 2021 hearing was generally consistent with Plaintiff's testimony.  (*Id.*)  The ALJ then noted that Plaintiff's medically determinable impairments could cause the alleged symptoms, although the testimony pertaining to the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the evidence in the record. (*Id.*)  Specifically, the ALJ noted Plaintiff's history of only conservative and sporadic outpatient medical health care, as well as incomplete compliance with medical regimen, attendance at appointments, and directions to abstain from illicit substances.  (*Id.*)  The ALJ acknowledged that Plaintiff's mental status evaluation findings consistently reflected generally benign abnormalities with intact cognition, appropriate and cooperative behavior, and some minor mood and affect fluctuations.  (*Id.*)

The ALJ then carefully narrated the progression of Plaintiff's treatments, which included periods of incarceration, followed by Plaintiff's return to work.  (Tr. 20-23.)  The ALJ noted that, although Plaintiff continued to receive treatment, interrupted by periods of incarceration, his mental status findings remained within normal limits. (Tr. 22, 23.)  Plaintiff even denied any desire to start psychotropic medications. (Tr. 23.)  Ultimately, Plaintiff was discharged from treatment in November 2019 due to loss of insurance.  (*Id.*)

The ALJ then recognized that the record did not contain any specific functional assessment to consider, but did note that the state agency medical consultants both found insufficient evidence to find medically determinable impairments. (Tr. 24.) The ALJ

then acknowledged that Plaintiff's mental health and primary care notes "do not document any notable or significant abnormalities in cognition, behavior, or manner of relating" and that difficulties appeared to have been related to "anxious or depressed moods or scattered thoughts when discussing his problems." (*Id.*)  The ALJ noted that Plaintiff was able to work following his periods of incarceration and had no documented emergency mental health care or corroboration for reported panic attacks, social isolation, or traumatic symptoms.  (*Id.*)  The ALJ finally recognized that Plaintiff sadly took his life in March 2020, but the record lacked any contemporaneous medical evidence and Plaintiff refused assistance in reactivating his insurance through Medicaid.  (*Id.*)

The ALJ recited that he gave "extreme deference" to the hearing testimony in finding the mental impairments severe, rather than nonsevere, and considered periods of substance abuse relapse in assigning the limitations to the RFC.  (*Id.*)  The ALJ found no objective evidence to support any significant restriction in his ability to interact with coworkers or supervisors.  (*Id.*)  Ultimately, the ALJ assigned Plaintiff an RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: he could understand, remember, execute, and maintain attention and concentration only for simple tasks; could have only occasional interaction with the public; and could tolerate changes associated only with simple work tasks."  (Tr. 19, 24.)

As shown above, the Court concludes that the ALJ carefully reviewed the evidence of record and tethered his RFC to the medical and other evidence therein, giving great deference to Plaintiff's testimony.  Indeed, the state agency reviewers found insufficient evidence to find any medically determinable impairment, (*see* Tr. 69-83), yet the ALJ did.

Additionally, the ALJ's nonexertional limitations are supported by the record.  First, the ALJ credited Plaintiff's testimony as to his ability to focus to completion of tasks, as reflected in the first and third limitations. (*See* Tr. 62-64.)  As for the second limitation regarding occasional interaction with the public, the Spectrum treatment notes reflect Plaintiff's attempts to use coping skills, increased efforts to improve interpersonal interactions, and dedication to learning social skills to interact with others and function without crowds.  (*See, e.g.,* Tr. 507, 509, 510, 516, 519).  These records even reflect improvements in this area, yet the ALJ applied the limitation to the RFC nonetheless.  *See Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-01344 EAW, 2020 WL 473618, at *5 (W.D.N.Y. Jan. 28, 2020) (concluding that an RFC assessment was not based on an ALJ's lay opinion when supported by medical opinion evidence and a claimant's testimony).

Further, Plaintiff does not argue for a more restrictive RFC or identify any supported limitations that were rejected by the ALJ.  Instead, Plaintiff simply argues for remand.  But Plaintiff maintains the burden of proving a more restrictive RFC than that assigned by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). Plaintiff does not attempt to carry this burden.  Finally, the Court notes that, "[w]here an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." *Beaman*, 2020 WL 473618, at *6 (internal quotation and citation omitted).  Here, the ALJ's RFC was more restrictive than the state reviewer, which found insufficient evidence for any sort of disability, and the RFC also is more restrictive than the treatment notes.

For these reasons, the Court concludes that the ALJ's RFC was based on substantial evidence.

**D.    The ALJ Properly Relied on the Grids, As Vocational Expert Testimony Was Not Required.**

Plaintiff's final argument is that the ALJ erred by solely relying on the Medical-Vocational Guidelines ("grids") in finding that Plaintiff could perform work in the national economy.  Plaintiff contends that his mental impairments were nonexertional limitations, and therefore the ALJ was obligated to call a vocational expert (VE) to testify, rather than just relying on the grids.

The grids factor in "the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78.  "Based on these considerations, the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy.  *Id.*

"Exclusive use of the grids is precluded, and VE testimony is required, only 'where the claimant's exertional impairments are compounded by significant nonexertional limitations' that limit the range of work."  *Shawn C. v. Comm'r of Soc. Sec.*, 20-cv-1378, 2022 WL 17037624, *5 (W.D.N.Y. Nov. 17, 2022) (quoting *Rosa*, 168 F.3d at 78).  *See also Fisk v. Colvin*, Case No. 14-cv-9318, 2017 WL 1159730, *7 (W.D.N.Y. Mar. 29, 2017) (recognizing that testimony from a vocational expert is only required "where a claimant's work capacity is *significantly diminished* by her nonexertional limitations") (emphasis in original)(citing *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986)). This happens only when the nonexertional limitations "so narrow [the claimant's] possible range of work as to deprive [him] of a meaningful employment opportunity."  *Taylor v. Barnhart*, 83 F. App'x 347, 350 (2d Cir. 2003).  Importantly, the "mere existence of a nonexertional impairment

does not automatically . . . preclude reliance on the guidelines." *Bapp*, 802 F.2d at 603. And "[a]n ALJ's determination of whether a claimant's nonexertional limitations significantly impact his ability to perform work constitutes a finding of fact, subject to deferential review." *Shawn C.*, 2022 WL 17037624, at *5 (citing *Jordan v. Comm'r of Soc. Sec.*, 194 F. App'x 59, 61 (2d Cir. 2006)).

As discussed above, the ALJ found no limitations on Plaintiff's exertional abilities but imposed three nonexertional limitations: (1) he could understand, remember, execute, and maintain attention and concentration only for simple tasks; (2) could have only occasional interaction with the public; and (3) could tolerate changes associated only with simple work tasks. (Tr. 19, 24.)  The ALJ also explicitly found that these limitations "had little or no effect on the occupational base of unskilled work at all exertional levels."  (Tr. 25.)  He noted, consistent with SSR 85-15, that "the basic mental demands of competitive, remunerative, unskilled work included the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  (*Id.*)

The law is clear that restrictions such as these, which restrict to simple and unskilled work, do not significantly impact the potential occupational base—especially when a claimant can perform work at all exertional levels.  *See Shawn C.*, 2022 WL 17037624, at *6; *Fisk*, 2017 WL 1159730, at *7.

Further, the Court notes that this factual finding is subject to deferential review. *See Shawn C.*, 2022 WL 17037624, at *5.  Thus, even if a contrary conclusion could be reached, the reviewing court can reject the factual finding "only if a reasonable factfinder

*would have to conclude otherwise*."  *Id.* at *7 (internal quotation marks and citation omitted) (emphasis in the original).   This is not such a situation.   In light of the ALJ's findings and analysis, the Court finds that his reliance on the grids, without the testimony of a vocational expert, to be proper.

## IV.    CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 9) is **GRANTED**.

Dated: February 18, 2025              J. Gregory Wehrman
Rochester, New York                   HON. J. Gregory Wehrman
                                      United States Magistrate Judge